# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA MENDEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,[1]<br><br>    Defendant.<br>_____/ | Case No. 1:23-cv-00649-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.     INTRODUCTION

On April 27, 2023, Plaintiff Brenda Mendez ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.     BACKGROUND

Plaintiff was born on April 11, 1985, and has more than a high school education. (Administrative Record ("AR") 39–40, 61, 76, 214, 222, 232, 408, 681.)  Plaintiff filed a claim for

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 17.)

SSI payments on September 22, 2014, alleging she became disabled on February 26, 2014, due to severe congenital thoracic scoliosis causing severe pain. (AR 19, 61, 76, 207, 214.)

Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on January 3, 2018, finding Plaintiff not disabled. (AR 19–28.) Plaintiff appealed the decision to the district court, who, on December 23, 2019, remanded the case for further proceedings to consider Plaintiff's "residual functional capacity [RFC][3] in light of the conclusion that [her] testimony was reliable and consistent and with full consideration of the evidence concerning [Plaintiff's] ability to sit." (AR 667. *See also* AR 790–811.)

Upon remand, the Appeals Council directed the assigned ALJ to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. (AR 667. *See also* AR 745.) The ALJ held hearings and issued a new written decision once again finding Plaintiff not disabled. (AR 667–82, 690–738.)

**A.    Relevant Evidence of Record[4]**

   **1.    Medical Evidence**

In August 2015, Plaintiff presented to Robert G. Fernandez, M.D., complaining of "severe incapacitating pain" that is "not controlled with fentanyl, Norco and ibuprofen." (AR 518.) Dr. Fernandez noted it that it is "impossible" for Plaintiff to be titrated off of her pain medications due to her "severe pathology." (AR 518.) Examination of Plaintiff's spine showed abnormal gait and posture and decreased range of motion. (AR 519.)

An x-ray of Plaintiff's lumbar spine performed in June 2016 showed degenerative changes, including general demineralization of the vertebral bodies and multilevel degenerative disc disease with multilevel disc space narrowing. (AR 623.) In January 2017, electrodiagnostic testing was

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. Id. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

normal with no evidence of polyneuropathy or lumbar radiculopathy. (AR 617.) Plaintiff received bilateral lumbar transforaminal epidural injections in February 2017. (AR 586.)

In December 2017, Plaintiff presented to Dr. Fernandez to re-establish care for chronic back pain due to severe scoliosis. (AR 1158–60.) She rated her pain at 5/10 but reported that it intermittently increases to 7/10 secondary to the cold weather. (AR 1158.) She reported "good control of her pain" on Naproxen and Butrans weekly. (AR 1158.) A physical examination of Plaintiff showed no acute distress; clear lungs; abnormal gait and posture; severe spinal deformity and asymmetry of spinal muscles with diffuse tenderness; severe decreased range of motion; muscular spasm; and uneven hip heights. (AR 1159.) Dr. Fernandez continued Plaintiff on Butrans, Gabapentin, Naproxen, and Baclofen for pain relief and referred her to physical therapy. (AR 1159.)

At a medication refill appointment in February 2018, Plaintiff continued to complain of chronic back pain, described as a constant aching pain that increases to a higher level of pain with certain types of movements. (AR 1161.) In May 2018, at a follow up appointment with Dr. Fernandez, Plaintiff rated her pain at 3/10, but said it increased intermittently from a 3 to an 8 out of 10. (AR 1165–67.) Plaintiff also reported that her right thigh pain above her knee inhibited her walking, although she had been told by her other provider that her knee was normal. (AR 1165.) According to Plaintiff, epidural steroid injections improved her condition. (AR 1165.)

Plaintiff presented for another follow up appointment with Dr. Fernandez in July 2018. (AR 1168–70.) She rated her pain at a 7 to 8 out of 10 (with some escalations to a level 8 or 9) and reported being very depressed and fatigued all the time with crying spells and problems sleeping. (AR 1168.) Examination findings documented a bony deformity, uneven hips, full range of motion of major joints except spine, and tearful affect. (AR 1169.) Dr. Fernandez noted that Plaintiff's severe pain was "well controlled on Baclofen, Butrans, Gabapentin, and Ibuprofen," and he administered a Ketorolac injection. (AR 1169.) Plaintiff was prescribed Venlafaxine for her depression and given a B12 injection for fatigue. (AR 1169.)

In October 2018, Plaintiff reported at a follow-up appointment with Dr. Fernandez that she felt better and rated her pain at a 3/10. (AR 1171–73.) She noted "some control of her back pain" with Naproxen and Butrans. (AR 1171.) Plaintiff requested another set of epidural injections, and

reported that the "slightest movements made her back pain worse." (AR 1171). She was referred back to pain management for epidural injections and another B12 injection for fatigue was administered. (AR 1172.)

Plaintiff presented for another follow-up appointment with Dr. Fernandez in January 2019. (AR 1174–76.) She rated her pain at a 3/10, but reported that it had gone up to a level 9 that week. (AR 1174.) Dr. Fernandez noted that Plaintiff's pain was "fairly well controlled" on her current pain regimen. (AR 1175.)

In August 2019, Plaintiff reported to Dr. Fernandez that she had not been taking any medications other than ibuprofen since January, since other medications sedated her and she was working in the fields and could not tolerate sedation. (AR 1177–79.) She rated her pain at a 4/10, and reported receiving some pain relief from epidural steroid injections. (AR 1177.) Dr. Fernandez noted that Plaintiff's pain "fairly not well controlled" and she was again referred back to pain management. (AR 1178.) Plaintiff requested physical therapy in November 2019. (AR 1182.)

At an appointment in April 2020, Dr, Fernandez noted that Plaintiff's pain was "fairly well controlled" and her current pain regimen was continued. (AR 1189–90.) In December 2020, it was noted that Plaintiff would follow up with pain management once CT scans were obtained for steroid injections. (AR 1198.)

Dr. Fernandez noted in March 2021 that both Plaintiff's pain and her depression were "well controlled" with current medication and treatment. (AR 1202, 1203.) She rated her pain at a 3/10 in her right leg, left low back, and right mid back. (AR 1201.) In June 2021, Plaintiff similarly rated her pain at a 3/10. (AR 1205.)

In December 2021, Dr. Fernandez again noted that Plaintiff's pain was "fairly well controlled" on her current pain regimen, which was continued. (AR 1362, 1363.) Dr. Fernandez observed in March 2022 that Plaintiff's pain and depression were "well controlled." (AR 1367.)

**2.   Opinion Evidence**

In June 2022, Dr. Fernandez completed a "Physical Medical Source Statement" form. (AR 1346–49, 1350–53.) He indicated that he treated Plaintiff every three months since December of 2013. (AR 1346.) He noted Plaintiff's diagnoses and symptoms of severe back pain from scoliosis,

chronic back pain, and fatigue and dizziness from pain medications. (AR 1346.) Dr. Fernandez also indicated the pain was worsened by movement, lifting, and cold weather. (AR 1346.) He opined that Plaintiff has depression and psychological factors affecting her physical condition. (AR 1346.)

According to Dr. Fernandez, Plaintiff can walk one to two city blocks, sit 20 minutes and stand 20 minutes, and spend a total of about two hours standing and walking and at least six hours sitting in an eight-hour workday. (AR 1347.) He assessed Plaintiff with the need to shift positions at will and would need unscheduled breaks every twenty minutes for five to 10 minutes. (AR 1347.) Dr. Fernandez limited Plaintiff to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently. (AR 1348.) He opined that Plaintiff would be off task 20 percent of the workday, was capable of low stress work, and would miss more than four days per month. (AR 1348.)

Dr. Fernandez also completed a "Mental Residual Functional Capacity Questionnaire" in June 2022. (AR 1342–44, 1354–56.) He reported Plaintiff's diagnosis of major depression with good prognosis, and opined that this impairment did not affect Plaintiff's ability to understand and remember, social interaction, or some areas of adaptation. (AR 1342.) According to Dr. Fernandez, Plaintiff would be precluded from carrying out detailed instructions, working in coordination or in proximity to others without being distracted, and making simple work-related decisions ten percent of the workday. (AR 1343.) Additionally, Dr. Fernandez opined that Plaintiff would be absent from work three days a month and unable to complete an eight-hour workday two times per month. (AR 1344.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 18, 2015, and again on reconsideration on November 20, 2015. (AR 93–97, 99–102, 791.) Following a hearing on September 13, 2017 (AR 33–60), an ALJ issued a written decision on January 3, 2018, finding Plaintiff not disabled. (AR 19–28.) Plaintiff appealed the decision to the district court, which, on December 23, 2019, remanded the case for further proceedings to consider Plaintiff's "residual functional capacity in light of the conclusion that [her] testimony was reliable and consistent and with full consideration of the evidence concerning [Plaintiff's] ability to sit." (AR

667. *See also* AR 790–811.)  Upon remand, the Appeals Council directed the assigned ALJ to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision. (AR 667. *See also* AR 745.)

On July 18, 2022, Plaintiff appeared with counsel and an interpreter and testified before the ALJ as to her alleged disabling conditions. (AR 704–10.) A vocational expert ("VE") also testified. (AR 710–15.) Abdul Ali Elmi, M.D., board certified in orthopedic surgery, testified at the hearing as a medical expert. (AR 696–703.)

Dr. Elmi testified that Plaintiff suffers from the severe impairment of status post-reconstructive surgery for theriacal lumbar scoliosis and lumbar spondylosis. (AR 698.) He noted that Plaintiff had reconstructive surgery 20 years earlier and had been treated with conservative management and some pain management treatment since that time. (AR 699.) Dr. Elmi stated that the most recent orthopedic examination did not show positive straight leg raising. (AR 699–700.) He testified that Dr. Fernandez's treatment notes showed that Plaintiff's scoliosis pain was fairly well controlled on her current pain regiment. (AR 700.) Dr. Elmi opined that someone with these findings would be "limited to basically light duty." (AR 700.) He explained that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; occasionally stoop and climb ramps and stairs, but never climb ladders, ropes, or scaffolds, or crawl or crouch; and should have only occasional exposure to extreme cold and damp. (AR 700–01.) Dr. Elmi noted Dr. Fernandez's opinion that Plaintiff would need unscheduled breaks every 20 minutes, but this was not necessary based on the record and musculoskeletal examination. (AR 701.) He observed that Dr. Fernandez indicated that Plaintiff's depression can affect pain and explained that he was not qualified to give an opinion on that aspect of her condition. (AR 701–702.)

Upon questioning from Plaintiff's attorney, Dr. Elmi testified that he would refer to Dr. Fernandez's opinion regarding the need for unscheduled breaks, but he noted that the record indicates the pain is fairly controlled. (AR 703.) According to Dr. Elmi, the type of pain Plaintiff experiences is a "tolerable constant pain" with "occasional aggravation" caused by physical activity or heavy lifting. (AR 703.)

**C.     The ALJ's Decision**

In a decision dated August 12, 2022, the ALJ again found that Plaintiff was not disabled, as defined by the Act. (AR 667–82.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 669–82.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since September 22, 2014, the application date (step one). (AR 669.) At step two, the ALJ found Plaintiff's following impairments to be severe: scoliosis, small fiber neuropathy, and depression. (AR 669–70.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 670–71.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except [Plaintiff] can stand and walk for four hours out of an eight-hour workday and will require the ability to adjust from sitting to standing and standing to sitting position as needed during the workday. She can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally kneel and stoop, but never crawl or crouch. She should not work in environments subjecting her to concentrated exposure to extreme cold temperatures, wetness, and/or humidity. [Plaintiff] should not work in environments exposing her to unprotected heights or machinery with dangerous, moving mechanical parts and is capable of performing jobs of a noncomplex nature requiring the performance of no more than simple routine tasks.

(AR 671–81.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 673.)

The ALJ determined that Plaintiff had no past relevant work (step four), but that, given her RFC, she could perform a significant number of other jobs in the local and national economies (step five). (AR 681–82.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 85–89.) In response, the VE testified that a person with the specified RFC could perform the jobs of cashier; small products assembler; and plastic hospital parts assembler. (AR

712–713.) Ultimately, the ALJ concluded that Plaintiff was not disabled since September 22, 2014, the application date.  (AR 682.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 6, 2023.  (AR 649–55.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be

'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in their evaluation of Dr. Fernandez's opinions. (Doc. 13 at 13–17; Doc. 16 at 1–4.) For the reasons stated below, the Court determines that the ALJ properly considered Dr. Fernandez's opinions and that remand is not warranted.

### A.    Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 416.927(b) and (c);[5] *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th

---

[5] Plaintiff filed her SSI claim before March 27, 2017, so Section 416.927, not Section 416.920c, governs the ALJ's evaluation of medical opinions. *See* 20 C.F.R. § 416.920c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

1 Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [their] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

**B.     Analysis**

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 416.927.

Treating physician Dr. Fernandez opined that Plaintiff could walk one to two city blocks, sit 20 minutes and stand 20 minutes, and spend a total of about two hours standing and walking and at least six hours sitting in an eight-hour workday. (AR 1347.) He assessed Plaintiff with the need to shift positions at will and would need unscheduled breaks every twenty minutes for five to 10 minutes. (AR 1347.) Dr. Fernandez limited Plaintiff to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently. (AR 1348.) He opined that Plaintiff would be off task 20 percent of the workday, would miss more than four days per month, and be unable to complete an eight-hour workday two times per month. (AR 1344, 1348.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Fernandez's opinion is contradicted by the opinion of consultative examiners, the State agency physicians, and the testifying medical expert Dr. Elmi. (AR 675–80.) Thus, the ALJ was required to state a "specific and legitimate reason," supported by substantial evidence, for rejecting the opinions of Dr. Fernandez. *Trevizo*, 871 F.3d at 675.

The ALJ gave "limited weight" and "some weight" to the opinions, finding that they were "not fully consistent" with the record showing that Plaintiff's pain was "fairly well controlled" and that her depression was "under control with medication." (AR 679, 680.) The ALJ properly rejected Dr. Fernandez's assessment of Plaintiff because it was not consistent the objective medical evidence, including Dr. Fernandez's own treatment notes. *See Valentine,* 574 F.3d at 692–93 (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected the opinion of treating physician, where treating physician's opinion was inconsistent with his own examination and notes of claimant); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion

where doctor's opinion was contradicted by his own contemporaneous findings); *Teleten v. Colvin*, No. 2:14-CV-2140-EFB, 2016 WL 1267989, at *5–6 (E.D. Cal. Mar. 31, 2016) ("An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes.") (citing *Tommasetti*, 533 F.3d at 1041; *Bayliss*, 427 F.3d at 1216); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion.") (citing *Johnson*, 60 F.3d at 1432–33).

As the ALJ found (AR 679), Dr. Fernandez's treatment notes repeatedly indicate that Plaintiff's scoliosis pain was "fairly well controlled" on her current pain regimen. (*See* AR 1169, 1175, 1189–90, 1202, 1362, 1367.) Plaintiff herself told Dr. Fernandez that her pain was controlled. (*See* AR 1158, 1171.) The ALJ further observed (AR 673) that Plaintiff consistently reported low levels of pain to Dr. Fernandez, rating her pain between 3 and 5 out of ten (*see* AR 1158, 1165, 1171, 1174, 1177, 1201, 1205), and that she no longer required strong narcotics to treat her pain. (AR 1177–79.) The ALJ similarly found (AR 680) that Dr. Fernandez's treatment notes showed Plaintiff's depression was also controlled by medication. (*See* AR 1203, 1367.)

Plaintiff points to individual records showing instances of uncontrolled back pain and depressive symptoms. (*See* Doc. 13 at 14–16 (citing AR 518, 1158, 1168).) The ALJ, however, considered and discussed each of these records, as well as the objective medical evidence (*see* AR 673–75), and ultimately concluded that the record showed that these instances of pain and depression were ultimately brought under control with medication during the relevant period. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Plaintiff also faults the ALJ for assigning the most weight to medical expert Dr. Elmi's opinion, which "disregarded how Plaintiff's severe impairment of depression impacts her pain level and physical impairments." (Doc. 13 at 17.) But Dr. Elmi did not "disregard" any "impact" between Plaintiff's pain and her depression; he instead testified that he was ***not qualified*** to give any opinion on such impact. (AR 701–702.) Moreover, the ALJ did take into consideration

the combination of Plaintiff's pain and depression—just not to the degree opined by Dr. Fernandez—in finding a restriction on complex work tasks. (*See* AR 680.)  Plaintiff may disagree with the ALJ's findings and conclusions, but the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954.

Here, the record evidence, and in particular Dr. Fernandez's treatment notes, fail to support his opinions that Plaintiff was so significantly impaired that she is not physically capable of working an eight-hour day, five days a week, on a sustained basis, even with some limitations.  The Court therefore finds that substantial evidence supports the ALJ's finding that Dr. Fernandez's treatment notes and the medical evidence of record showed essentially controlled scoliosis pain and depression, which undermined the severe limitations Dr. Fernandez assessed.  This inconsistency was a specific and legitimate reason for the ALJ to discount Dr. Fernandez's opinions. *See Bayliss*, 427 F.3d at 1216; *Rollins,* 261 F.3d at 856; *Connett*, 340 F.3d at 875; *Tonapetyan*, 242 F.3d at 1149.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **February 5, 2024**                         /s/ *Sheila K. Oberto*                    .
                                                           UNITED STATES MAGISTRATE JUDGE